IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

ROBYN PLACE, )
)
    Plaintiff, )
) CIVIL ACTION NO.: 1:11-cv-606-MEF
v. )
)
PILGRIM'S PRIDE, CORPORATION, ) JURY DEMAND
and JAMIE HOLMES, )
)
    Defendants. )

## COMPLAINT

**I.    INTRODUCTION**

1.    This is an action for declaratory judgment, equitable relief, and money damages, instituted to secure the protection of and to redress the deprivation of rights secured through Title VII of the Act of Congress commonly known as "The Civil Rights Act of 1964," 42 U.S.C. § 2000(e) et seq., as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a (hereinafter "Title VII") which provides for relief against discrimination in employment on the basis of sex, race, and retaliation related thereto. The plaintiff also sets forth claims under laws of the State of Alabama. The plaintiff seeks compensatory and punitive damages, and requests a jury trial pursuant to 42 U.S.C. § 1981a.

**II.    JURISDICTION AND VENUE**

2.    The unlawful employment practices alleged herein below were committed by the defendants within Coffee County, Alabama. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(a)(4) and 28 U.S.C. §§ 2201 and 2202. Supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(g).

3. The plaintiff requests a jury trial on all issues pursuant to 42 U.S.C § 1981a.

**III. PARTIES**

4. The plaintiff, Robyn Place (hereinafter "Place" or "Plaintiff"), is a Caucasian, female citizen of the United States, and a resident of the State of Alabama. Plaintiff is an employee of the defendant, Pilgrim's Pride, Corporation, at the defendant's Enterprise, Alabama, location.

5. The defendant, Pilgrim's Pride, Corporation (hereinafter "Pilgrim's" or "Defendant") is a Texas corporation licensed to do business in and operating in Geneva County, Alabama. During the time period pertinent to this lawsuit, the Defendant was the plaintiff's employer within the meaning of Title VII.

6. At all times relevant to this action, the corporate Defendant had employed at least fifteen (15) or more employees.

7. Defendant, Jamie Holmes (hereinafter "Holmes" or "Defendant"), is an African-American male and at all times material to this action was employed by co-defendant Pilgrim's as a Processing Supervisor at their Enterprise, Alabama, location. Holmes was a direct supervisor of the Plaintiff. Holmes is a citizen of the United States, and upon information and belief is a resident of the State of Alabama.

**IV. ADMINISTRATIVE EXHAUSTION**

8. The Plaintiff has satisfied all administrative prerequisites for filing suit under Title VII against Pilgrim's.

9. On or about August 11, 2010, the plaintiff timely filed a Charge of employment discrimination with the Equal Employment Opportunities Commission, in which she complained that Pilgrim's subjected her to sexual harassment, racial harassment and unlawful retaliation.

2

10. On or about January 13, 2011, the plaintiff timely amended her Charge of Discrimination with the Equal Employment Opportunities Commission, in which she complained that Pilgrim's subjected her to additional sexual harassment, racial harassment and unlawful retaliation.

11. Plaintiff subsequently received authorization from the EEOC to file a private action and is filing this Complaint within ninety (90) days of receiving said authorization.

V. **STATEMENT OF FACTS AND CLAIMS**

12. On or about February 15, 2010, Plaintiff began working as a production line worker for the Defendant at their Enterprise, Alabama, location.

13. During her new hire orientation, Plaintiff received no training on sexual harassment, nor was she provided with a handbook.

14. Approximately three (3) weeks after she became employed, the Plaintiff began to be subjected to ongoing, unwelcomed acts of racial and sexual harassment. This harassment continued throughout her employment.

15. Throughout her employment, the Plaintiff was sexually and racially harassed by her African-American male co-workers, by African-American male Lead people, and by her African-American male supervisor.

16. Mario Martin and Keith Thompson[1], Lead Persons, repeatedly subjected her to racial slurs and vulgar, sexually inappropriate language. They also repeatedly asked her to perform sexual acts; telling her that it would be easier for her at work if she would do what they wanted.

---

[1] Martin and Thompson are African-Americans.

17. Martin and Thompson also assaulted the Plaintiff numerous times. Both Martin and Thompson grabbed the Plaintiff's butt numerous times. Martin also pressed his penis up against her butt often.

18. Martin and Thompson also told Plaintiff that if she did not go along with their requests that she would be fired.

19. Martin and Thompson told Plaintiff that if she brought them candy or food that they would leave her alone. She brought them food, but the harassment did not stop.

20. On or about April 25, 2010, Plaintiff was transferred to the Evisceration Department to work on First Processing. While Martin and Thompson were no longer in her department, they continued to harass her in the mornings and whenever they saw her.

21. Martin continued to direct sexually inappropriate comments to Plaintiff, including telling her that she needed a man to take care of her needs and to fully satisfy her. Thompson also continually asked her to go with him out to his car for sex. Plaintiff refused.

22. Martin and Thompson also made repeated sexually and racially inappropriate comments to Plaintiff about her anatomy, including telling her she had a nice "tush," that she had a butt like a black woman and that they had never seen a white woman with a "tush" like that.

23. In early May 2010, Jamie Holmes, Processing Supervisor and the Plaintiff's direct supervisor, told her that she was just there for sex.

24. Holmes made repeated sexually inappropriate comments to the Plaintiff about her anatomy and body and compared her to how black women are shaped. Holmes also made similar racially and sexually harassing comments to other women in the plant.

25. Holmes grabbed the Plaintiff's buttocks more than once and also came up behind her and rubbed his body against her buttocks.

26. Holmes also asked her for sexual favors and told her that it was her word against his and that she would be fired if she did not do what he wanted. Holmes also offered to pay her for four (4) hours of overtime in exchange for sex. Plaintiff repeatedly refused his sexual demands.

27. On or about May 22, 2010, Holmes told the Plaintiff to go with him to his office to get some paperwork. While they were in his office, he shut the door and closed the blinds. He told Plaintiff that she was not there to work; that they were going to have sex and that he would give her four (4) hours of overtime in exchange for the sex.

28. Plaintiff again refused and said was going to go home. Holmes told her that she was not leaving and that she was going to give him what he wanted right now. Holmes told her that she had kids at home to support and had better think about them because she would not have a job if she did not give him what he wanted right now.

29. Plaintiff told Holmes that he could not fire her for not having sex with him and he replied that it would not be the first time nor the last.

30. Holmes then told her to get in the bathroom. He manhandled her into the bathroom, pulled her pants down and raped her. Holmes then told her to keep her mouth shut because no one would believe her.

31. Holmes then paid Plaintiff for four(4) hours overtime on her time card for which she did not clock in or out.

32. On or about May 24, 2010, Plaintiff complained to Audrey Griswold, Human

Resources Supervisor, about the sexual harassment she was subjected to by Martin and Thompson.

33. On the same day of her Complaint, the Plaintiff was told by Griswold that her "investigation" was done and nothing was found to confirm her complaints.

34. Griswold also told the Plaintiff that she [Plaintiff] had brought it all on herself and that Griswold did not believe in sexual harassment and that she [Griswold] could not imagine Martin or Thompson doing any of the things the Plaintiff had alleged.

35. To Plaintiff's knowledge, no remedial action was taken in response to her complaints and the harassment by Martin, Thompson and Holmes continued.

36. Additionally, after the Plaintiff complained, many of her co-workers at the plant knew about her complaints and she was retaliated against on a constant basis, including being physically threatened, by her co-workers.

37. After her complaint to Griswold, the Plaintiff was moved to work the Mirror, which was next to Second Processing–giving Martin access to her. While working on the Mirror, Plaintiff was subjected to continued unwelcome acts of sexual and racial harassment by Martin. He made masturbating motions towards her, told her "your time is coming, you white bitch," and leered at her while he grabbed himself.

38. Martin's girlfriend, known at the plant as "V", also threatened the Plaintiff and followed the Plaintiff around the plant in a menacing manner.

39. Holmes continued to subject the Plaintiff to unwelcome sexual harassment. Holmes repeatedly threatened the Plaintiff, asked her for sex, and would holding his private parts and tell her that he wanted some of that "stuff" and still wanted that "pussy." Holmes continued to offer her overtime hours in exchange for sex. Plaintiff refused his sexual demands.

40. Holmes also continued to touch her inappropriately, including sliding his hand across her bottom, rubbing himself against her and touching her crotch area.

41. In late May 2010, the Plaintiff attempted to complain to the Plant Manager, Craig Williams, about the ongoing sexual harassment but he did not take her complaint.

42. In late May 2010, the Plaintiff did complain to Griswold and Doug Owens, Human Resources Manager, about the continued harassment by Martin and about the retaliation from her co-workers.

43. To Plaintiff's knowledge no remedial action was taken in response to her complaints and the harassment and retaliation continued.

44. On or about June 10, 2010, Plaintiff inquired about an overtime posting. Supervisor Jeremy [LNU] told her that she would not work overtime in second processing ever again or get any overtime if he could help it. This was part of the ongoing retaliation.

45. On or about July 12, 2010, Holmes took the Plaintiff to the Live Hang area and told her that he wanted more of "that pussy" and demanded sex. Plaintiff refused.

46. On or about July 15, 2010, Holmes took the Plaintiff through the cage door, downstairs behind a barrel and exposed himself to her. He then grabbed her hand and put it on his penis twice. She broke free from him and ran away.

47. On or about July 19, 2010, Holmes stood holding himself while leering at the Plaintiff while she was working. Plaintiff began shaking uncontrollably and went to Suzy Mercer, Occupational Health Manager, due to suffering from an emotional breakdown. Mercer sent her to Wiregrass Hospital Emergency Room.

48. Plaintiff was out of work on leave from July 19, 2010, through July 26, 2010. Upon

her return to work she discovered that Holmes had been terminated for stealing chickens.

49. On August 3, 2010, the Plaintiff complained to Joann Aplin, Human Resources Representative, about the sexual harassment to which she had been subjected by Holmes.

50. Plaintiff then met with Owens about her complaints.

51. To Plaintiff's knowledge no remedial actions were taken in response to her complaints as the harassment and retaliation continued.

52. On or about August 11, 2010, Plaintiff filed a Charge of Discrimination with the E.E.O.C. setting out claims of racial harassment, sexual harassment and retaliation against the Defendant.

53. Thereafter, Plaintiff was subjected to additional acts of retaliation including, but not limited to: being subjected to unwarranted counseling and discipline, and being subjected to hostile working conditions by her co-workers that interfered with her ability to perform her job.

54. When the Plaintiff would complain about the ongoing retaliation she was told to just do her job. No remedial actions were taken to address the matter.

55. Eventually, due to the ongoing hostile environment, Plaintiff took a leave of absence and has been unable to return to work.

56. Additionally, while working at Pilgrim's, Plaintiff was told by at least three Supervisors that in the First Processing department women are not allowed to work overtime on Saturdays–only men could do so. If a woman had overtime on Saturday it was given in exchange for sex.

57. The sexually hostile environment at the Pilgrim's Enterprise, Alabama, plant was so severe, pervasive and blatant that the defendant knew or should have known about the unwelcomed

sexual harassment to which the Plaintiff was subjected.

58. The Defendant Pilgrim's failed to promulgate, enforce or distribute an effective policy or procedure for lodging sexual harassment, sex discrimination, racial harassment or retaliation complaints.

59. The unlawful conduct of the Defendants as described above was done with malice and/or reckless disregard of the Plaintiff's Federally protected rights.

60. The Defendants' conduct as described above caused the Plaintiff emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and humiliation.

## COUNT I - TITLE VII VIOLATIONS AGAINST PILGRIM'S PRIDE, CORP.,: SEXUAL HARASSMENT AND RETALIATION

61. The Plaintiff re-alleges and incorporates by reference paragraphs 1-60 above with the same force and effect as if fully set out in specific detail hereinbelow.

62. The Defendant, Pilgrim's Pride, Corporation, wilfully and maliciously subjected the Plaintiff to unlawful sexual harassment, thereby discriminating against her on the basis of sex with respect to the terms, conditions, and privileges of her employment, and culminating in her constructive discharge.

63. The sexual harassment of the Plaintiff by her co-workers, Lead persons and direct supervisor was unwelcome and was so severe and/or pervasive enough to adversely affect the terms and conditions of her employment.

64. The Defendant knew or should have known of the sexual harassment of the Plaintiff and/or the sexual harassment of other female employees and did not take effective preventative action or prompt effective remedial action.

65. The Plaintiff made good faith and reasonable complaints of sexual harassment to the Defendant.

66. The Plaintiff made good faith and reasonable complaints of retaliation to the Defendant.

67. The Plaintiff opposed sexual harassment and retaliation by filing a Charge of Discrimination with the E.E.O.C.

68. The Defendant retaliated against the Plaintiff for protesting and complaining about sexual harassment and retaliation in the terms, conditions and benefits of her employment, including subjecting her to unwarranted discipline, altering the terms of her job, and culminating in her constructive discharge.

69. Said sexual harassment and retaliation was done maliciously, willfully, and with reckless disregard for the rights of the Plaintiff.

70. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for backpay, declaratory judgment, injunction relief, and compensatory and punitive damages is her only means of securing adequate relief.

71. Plaintiff is now suffering, and will continue to suffer irreparable injury from defendant's unlawful conduct as set forth herein unless enjoined by this Court.

## COUNT II - TITLE VII VIOLATIONS AGAINST PILGRIM'S PRIDE, CORP.,: SEXUAL DISCRIMINATION

72. The Plaintiff re-alleges and incorporates by reference paragraphs 1-71 above with the same force and effect as if fully set out in specific detail hereinbelow.

73. The Plaintiff was also subjected to disparate treatment on the basis of her gender, female, in the terms, conditions and benefits of her employment, including her wages and

specifically being denied the ability to earn overtime pay, in contrast to male employees, as set out in detail above.

74.     Said discrimination was done maliciously, willfully, and with reckless disregard for the rights of the Plaintiff.

75.     Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for backpay, declaratory judgment, injunction relief, and compensatory and punitive damages is her only means of securing adequate relief.

76.     Plaintiff is now suffering, and will continue to suffer irreparable injury from the Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

## COUNT III - TITLE VII VIOLATIONS AGAINST PILGRIM'S PRIDE, CORP.,: RACIAL HARASSMENT AND RETALIATION

77.     The Plaintiff re-alleges and incorporates by reference paragraphs 1-76 above with the same force and effect as if fully set out in specific detail hereinbelow.

78.     The Defendant, Pilgrim's Pride, Corporation, wilfully and maliciously subjected the Plaintiff to unlawful racial harassment, thereby discriminating against her on the basis of race with respect to the terms, conditions, and privileges of her employment, and culminating in her constructive discharge.

79.     The racial harassment of the Plaintiff by her co-workers, Lead persons and direct supervisor was unwelcome and was so severe and/or pervasive enough to adversely affect the terms and conditions of her employment.

80.     The Defendant knew or should have known of the racial harassment of the Plaintiff and did not take effective preventative action or prompt effective remedial action.

81. The Plaintiff, in good faith, opposed racial harassment and retaliation by filing a Charge of Discrimination with the E.E.O.C.

82. Thereafter, the Defendant retaliated against the Plaintiff for protesting and complaining about racial harassment and retaliation in the terms, conditions and benefits of her employment, including subjecting her to unwarranted discipline, altering the terms of her job, and culminating in her constructive discharge.

83. Said racial harassment and retaliation was done maliciously, willfully, and with reckless disregard for the rights of the Plaintiff.

84. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for backpay, declaratory judgment, injunction relief, and compensatory and punitive damages is her only means of securing adequate relief.

85. Plaintiff is now suffering, and will continue to suffer irreparable injury from the Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

### COUNT IV - NEGLIGENT AND/OR WANTON HIRING, SUPERVISION, TRAINING, AND RETENTION BY PILGRIM'S PRIDE, CORP.

86. The Plaintiff re-alleges and incorporates by reference paragraphs 1-85 above with the same force and effect as if fully set out in specific detail hereinbelow.

87. This is a claim arising under the law of the State of Alabama to redress the negligent and/or wanton hiring, supervision, training, and retention of Mario Martin, Keith Thompson, and/or Jamie Holmes by the Defendant, Pilgrim's Pride, Corp.

88. The Defendant negligently and/or wantonly failed to adequately hire, supervise and train and negligently and/or wantonly retained Martin, Thompson and/or Holmes, which proximately

caused the assault and battery of the Plaintiff, the invasion of the Plaintiff's privacy, the outrageous conduct towards the Plaintiff, the sexual harassment of the Plaintiff, and the acts of sex discrimination and retaliation against the Plaintiff as set out herein.

89. These unlawful acts to which the Plaintiff was subjected caused her great emotional distress for which she seeks compensatory and punitive damages against the Defendant.

### COUNT V - ASSAULT AND BATTERY
### AGAINST ALL DEFENDANTS

90. The Plaintiff re-alleges and incorporates by reference paragraphs 1-89 above with the same force and effect as if fully set out in specific detail hereinbelow.

91. This is a claim arising under the laws of the State of Alabama to redress the assault and battery of the Plaintiff by Martin, Thompson and Holmes, and the ratification of that conduct by Defendant, Pilgrim's Pride, Corp.

92. Martin, Thompson and Holmes intentionally subjected the Plaintiff to harmful, rude, and unwanted touching, as set out in detail above.

93. Such conduct proximately caused the Plaintiff to suffer great emotional distress for which she claims compensatory and punitive damages from the Defendants.

94. The Defendant, Pilgrim's Pride, Corp., condoned, authorized, and/or ratified this unlawful conduct and is directly liable for the acts of its supervisory agents.

### COUNT VI - INVASION OF PRIVACY
### AGAINST ALL DEFENDANTS

95. The Plaintiff re-alleges and incorporates by reference paragraphs 1-94 above with the same force and effect as if fully set out in specific detail hereinbelow.

96. This is a claim arising under the laws of the State of Alabama to redress violations by Martin, Thomas and Holmes of the Plaintiff's right to privacy and the ratification of that conduct by Defendant Pilgrim's Pride, Corp.

97. The conduct of Martin, Thomas and Holmes, as set out above, was an intentional invasion of Plaintiff's privacy and proximately caused Plaintiff to suffer great emotional distress for which she claims compensatory and punitive damages from the Defendants.

98. The Defendant, Pilgrim's Pride, Corp., condoned, authorized, and/or ratified this unlawful conduct and is directly liable for the acts of its supervisory agents.

## COUNT VII - OUTRAGE
## AGAINST ALL DEFENDANTS

99. The Plaintiff re-alleges and incorporates by reference paragraphs 1-98 above with the same force and effect as if fully set out in specific detail hereinbelow.

100. This is a claim arising under the laws of the State of Alabama to redress the outrageous conduct directed at the Plaintiff by Martin, Thomas and Holmes and the ratification of that conduct by Defendant Pilgrim's Pride, Corp.

101. The intentional conduct of Martin, Thomas and Holmes, as set out above, was extreme, outrageous, and beyond the boundaries of decency in civilized society, and it proximately caused Plaintiff to suffer great emotional distress for which she claims compensatory and punitive damages from the Defendant.

102. The Defendant, Pilgrim's Pride, Corp., condoned, authorized, and/or ratified this unlawful conduct and are directly liable for the acts of its supervisory agents.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1. Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of the Defendants are violative of the rights of the Plaintiff as secured by Title VII and the laws of the State of Alabama.

2. Grant Plaintiff a permanent injunction enjoining the Defendants, their agents, successors, employees, attorneys and those acting in concert with the Defendants and at the Defendants' request from continuing to violate Title VII and the laws of the State of Alabama.

3. Enter an Order requiring the Defendants to make the Plaintiff whole by awarding her the position(s) she would occupy in the absence of sex harassment, racial harassment, sex discrimination, and retaliation and/or frontpay, backpay (plus interest), compensatory, punitive, and/or nominal damages.

4. Enter an Order requiring the Defendants to make the Plaintiff whole by awarding her the compensatory, punitive and/or nominal damages to which she is entitled as a result of the Defendants' violations of Alabama State law.

5. The Plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorney's fees and expenses.

Respectfully submitted,

*[signature]*
Temple D. Trueblood (TRUE0355)
Counsel for Plaintiff

OF COUNSEL:
WIGGINS, CHILDS, QUINN & PANTAZIS, L.L.C.
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 314-0500

CO-COUNSEL:
Bobbie S. Crook, Esq.
367 South St. Andrews Street
Dothan, Alabama 36301
(334) 671-8062


**THE PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON ALL ISSUES TRIABLE TO A JURY.**

*[signature]*
OF COUNSEL